UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RONALD SLONAKER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:15-cv-00751-MHH |
| } | |
| **NANCY A. BERRYHILL,** } | |
| **Acting Commissioner of the** } | |
| **Social Security Administration,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Ronald Slonaker seeks judicial review of a final adverse decision of the Commissioner of Social Security.[1] The Commissioner denied Mr. Slonaker's claims for a period of disability and disability insurance benefits and supplemental security income. After careful review, the Court remands this action for further administrative proceedings.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

**I.   PROCEDURAL HISTORY**

Mr. Slonaker applied for a period of disability and disability insurance benefits and supplemental security income on October 29, 2012. (Doc. 7-6, pp. 2, 8). Mr. Slonaker alleges that his disability began on September 15, 2012. (Doc. 7-6, pp. 2, 8). The Commissioner initially denied Mr. Slonaker's claims on December 11, 2012. (Doc. 7-5, p. 8). Mr. Slonaker requested a hearing before an Administrative Law Judge (ALJ). (Doc. 7-5, p. 16). The ALJ issued an unfavorable decision on July 24, 2014. (Doc. 7-3, p. 23). On March 8, 2015, the Appeals Council declined Mr. Slonaker's request for review (Doc. 7-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g), § 1383(c).

**II.   STANDARD OF REVIEW**

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence" or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r of Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.  SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of

Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Slonaker has not engaged in substantial gainful activity since September 15, 2012, the alleged onset date. (Doc. 7-3, p. 28). The ALJ determined that Mr. Slonaker suffers from the following severe impairments: diabetes mellitus with neuropathy, essential hypertension, bipolar disorder, intermittent explosive disorder, and history of alcohol abuse. (Doc. 7-3, p. 28). Based on a review of the medical evidence, the ALJ concluded that Mr. Slonaker does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, p. 29).

Next, the ALJ evaluated Mr. Slonaker's residual functional capacity in light of Mr. Slonaker's impairments. The ALJ determined that Mr. Slonaker has the RFC to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following deviations and/or limitations. The claimant is limited to unskilled work. The claimant is precluded from climbing ladders, ropes or scaffolds, and he cannot work at unprotected heights or with hazardous machinery. The claimant can operate foot controls bilaterally no more than occasionally. He can have no more than frequent interaction with co-workers or

supervisors, and no more than occasional interaction with the general public.

(Doc. 7-3, p. 31). Based on this RFC, the ALJ concluded that Mr. Slonaker is not able to perform his past relevant work as a truck driver. (Doc. 7-3, pp. 35-36). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Mr. Slonaker can perform, including automobile detailer, hand packager, and janitor. (Doc. 7-3, p. 36). Accordingly, the ALJ determined that Mr. Slonaker has not been under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 37).

## IV.   ANALYSIS

Mr. Slonaker presents five arguments in support of his appeal, the first of which is that the Appeals Council failed to adequately review new evidence. Because the Court finds that the Appeals Council should have considered the new evidence, the Court will discuss only the first argument.

After the ALJ issued a decision in this case in July 2014, Mr. Slonaker petitioned the Appeals Council for review and submitted additional evidence in support of his claim for benefits. The new evidence included Cherokee Etowah-Dekalb Mental Health Center (CED) records for Mr. Slonaker from August 28, 2014 and September 11, 2014 (Doc. 7-3, pp. 19-21); an August 28, 2014 Mental Health Source Statement from his CED treating physician, Dr. Richard Grant

(Doc. 7-3, p. 22); and a September 11, 2104 Mental Health Source Statement from a CED mental health therapist, (Doc. 7-3, p. 18).

"'With a few exceptions, [a] claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). The Appeals Council must review evidence that is new, material, and chronologically relevant. *Ingram*, 496 F.3d at 1261. The Court considers de novo whether supplemental evidence is new, material, and chronologically relevant. *Washington*, 806 F.3d at 1321.

Evidence is "new" if it is not redundant of evidence already present in the record. As discussed in greater detail below, the records that Mr. Slonaker presented to the Appeals Council constitute new evidence. Evidence is chronologically relevant if it relates to the period on or before of the ALJ's decision. 20 C.F.R. § 404.970(a)(5). A medical evaluation conducted after the ALJ's decision may be chronologically relevant if it pertains to conditions that pre-existed the ALJ's opinion. *Washington*, 806 F.3d at 1322-23 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)). In this case, the new medical records from August 28, 2014 and September 11, 2014 post-date the ALJ's July 24, 2014 decision. Nevertheless, the medical records indicate that Mr. Slonaker's

limitations have existed since September 15, 2012, which is a date that precedes the ALJ's decision.  (Doc. 7-3, pp. 18, 22).  Thus, the additional evidence is chronologically relevant because it relates back to the date of the ALJ's decision.

For supplemental evidence to be material, the evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result."  *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).  For example, if the claimant's assertion of a particular ailment is unsubstantiated, supplemental medical evidence with respect to that ailment is material because there is a reasonable possibility that the ALJ may have decided differently if the claimant's assertion had been validated by medical evidence.  *Caulder v. Brown*, 791 F.2d 872, 878 (11th Cir. 1986).

Here, there is a reasonable possibility that Mr. Slonaker's supplemental evidence would change the ALJ's RFC determination, and thus change the administrative result.  Based on the evidence in the record when the ALJ issued his opinion, the ALJ found that Mr. Slonaker's RFC enables him to perform unskilled work with a number of postural and non-exertional limitations.  (Doc. 7-3, p. 31). In reaching his RFC determination, the ALJ relied on treatment notes from Dr. Brian A. Perry.  (Doc. 7-3, p. 32).  Dr. Perry treated Mr. Slonaker on June 22, 2009 for emotional issues including anger, anxiety, mood swings, and depressive symptoms.  (Doc. 7-8, p. 65).  On November 11, 2009, Dr. Perry recommended

that Mr. Slonaker not drive until he felt safe to do so due to his bouts of dizziness. (Doc. 7-8, p. 63). Dr. Perry gave Mr. Slonaker a back to work note explaining the restriction. (Doc. 7-8, p. 63). In early 2012, Dr. Perry again noted Mr. Slonaker's battle with chronic anxiety and mood swings. (Doc. 7-8, pp. 60, 61).

The ALJ also considered medical records from Dr. Chris S. Randolph who saw Mr. Slonaker on January 6, 2010 during an emergency room visit. (Doc. 7-8, p. 30). When he arrived at the emergency room, Mr. Slonaker was anxious and showed signs of depression and schizophrenia. (Doc. 7-8, p. 33). Before discharging Mr. Slonaker from the hospital, Dr. Randolph strongly encouraged Mr. Slonaker to follow up with the Mental Health Center or a physician of his choice. (Doc. 7-8, p. 30).

The ALJ also reviewed records from a CED psychiatrist and Dr. Grant. The psychiatrist's findings and Dr. Grant's findings are somewhat inconsistent. In 2010, the CED psychiatrist diagnosed Mr. Slonaker with Bipolar II Disorder and Alcohol Dependence. (Doc. 7-8, p. 46). On August 28, 2012, a CED therapist noted that Mr. Slonaker had significant treatment issues that included depression, anger, and self-esteem. (Doc. 7-8, p. 44). The therapist diagnosed Mr. Slonaker with "Bipolar I, Mixed, Severe with Psychotic Features." (Doc. 7-8, p. 45). In addition to economic problems, the therapist noted that Mr. Slonaker has problems with his primary support group, his social environment, his interaction with the

legal system, and other psychological and environmental problems. (Doc. 7-8, p. 45). A medical doctor or licensed psychologist agreed with the therapist's diagnosis. (Doc. 7-8, p. 45). Similarly, on October 12, 2012, Dr. Grant described Mr. Slonaker's mood as labile and noted that Mr. Slonaker suffered from delusions. (Doc. 7-8, p. 40). But Dr. Grant noted that Mr. Slonaker's attention and concentration was adequate and that he had fair judgment and appropriate behavior. (Doc. 7-8, p. 40).

On May 9, 2013, Dr. Grant issued a report that indicated that Mr. Slonaker had fair insight and judgment. (Doc. 7-8, p. 88). Mr. Slonaker's thought process was logical, and his attention and concentration were adequate. (Doc. 7-8, p. 88). In contrast, monthly reports from the CED from July 25, 2013 through December 16, 2013, indicate that Mr. Slonaker was dysphoric, sad, and irritated. (Doc. 7-8, pp. 89-93). Similarly, Dr. Grant, on February 6, 2014, determined that Mr. Slonaker was agitated and was suffering from hallucinations even though he found Mr. Slonaker's thought process, concentration, and behavior to be normal. (Doc. 7-8, p. 97). A few weeks later, on February 24, 2014, a CED therapist noted that Mr. Slonaker had significant psychiatric, emotional, and psychological issues as well as increased depression, anger, and delusions. (Doc. 7-8, p. 94). The therapist diagnosed Mr. Slonaker with "Bipolar I, Mixed Severe with Psychotic

Features." (Doc. 7-8, p. 96). The therapist ordered a psychiatric assessment once every six months and individual therapy once every month. (Doc. 7-8, p. 95).

On April 29, 2014, Dr. June Nichols examined Mr. Slonaker at the request of the state agency. (Doc. 7-8, p. 99). Mr. Slonaker told Dr. Nichols that he "began having problems two and ½ years ago with a serious anger problem." (Doc. 7-8, p. 99). Mr. Slonaker reported that he sought treatment at a hospital after he had a nervous breakdown in 2011 and became "unglued." (Doc. 7-8, p. 99). Dr. Nichols found that Mr. Slonaker was depressed and anxious, but he was neither suicidal nor homicidal. (Doc. 7-8, p. 100). Dr. Nichols found that Mr. Slonaker's "[s]peed of mental processing was slowed." (Doc. 7-8, p. 100). Dr. Nichols wrote that Mr. Slonaker's "[r]ecent memory functions appear[ed] to be grossly intact," and his "[i]mmediate memory functions appear[ed] to be fair." (Doc. 7-8, p. 100). Additionally, Dr. Nichols found that Mr. Slonaker's thought process was within normal limits and that Mr. Slonaker did not have auditory or visual hallucinations. (Doc. 7-8, p. 101). Dr. Nichols opined that Mr. Slonaker had "good" judgment and insight. (Doc. 7-8, p. 101).

Dr. Nichols's diagnostic impressions for Mr. Slonaker included: Intermittent Explosive Disorder, Bipolar I Disorder, Mixed Severe with Psychotic Features by history. (Doc. 7-8, p. 101). Dr. Nichols concluded that Mr. Slonaker's "[p]rognosis for significant improvement over the next 12 months is guarded due

to lack of financial resources and his involvement at CED has not helped to resolve symptoms." (Doc. 7-8, p. 101). Dr. Nichols found that Mr. Slonaker suffers from symptoms of depression and anxiety and that his impulsive anger is potentially destructive because Mr. Slonaker believes that others look at him negatively. (Doc. 7-8, p. 101). Dr. Nichols opined that Mr. Slonaker's "ability to relate interpersonally and withstand the pressures of everyday work is moderately compromised due to the nature of his symptoms." (Doc. 7-8, pp. 101-102). Dr. Nichols also opined that Mr. Slonaker "does not have deficits, which would interfere with his ability to remember, understand and carry out work related [instructions]." (Doc. 7-8, p. 102).

There is a reasonable possibility that the administrative decision would have been different if the ALJ had had the opportunity to analyze the supplemental evidence that Mr. Slonaker presented to the Appeals Council. The ALJ noted that "[Only Dr. Nichols and] no other treating or examining source has stated an opinion regarding the severity of the claimant's conditions and his degree of limitation." (Doc. 7-3, p. 35). Yet, the additional evidence submitted to the Appeals Council includes opinions on the severity of Mr. Slonaker's conditions and his degree of limitation. The additional evidence from the CED therapist

substantiates Mr. Slonaker's allegations. (Doc. 7-3, p. 18).[2] Moreover, the CED therapist's evaluation of Mr. Slonaker (Doc. 7-3, p. 18) is consistent with Mr. Slonaker's monthly psychiatric reports from the CED reviewed by the ALJ. (Doc. 7-8, pp. 89-93). Therefore, an ALJ could not, as the Commissioner argues, easily dismiss the CED therapist's evaluation of Mr. Slonaker on grounds of inconsistency.

Similarly, the ALJ could not readily dismiss Dr. Grant's August 2014 evaluation (Doc. 7-8, p. 22), especially because in his opinion, the ALJ gave Dr. Grant's treatment records "great weight." (Doc. 7-3, p. 35). In the supplemental evaluation, Dr. Grant opined that Mr. Slonaker did not have the ability to "understand, remember or carry out very short and simple instructions," or "maintain attention, concentration and/or pace for periods of at least two hours," or "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." (Doc. 7-3, p. 22). If the ALJ views certain aspects of Dr. Grant's history of treatment of Mr. Slonaker in isolation (*See e.g.*, Doc. 7-8, p. 97), then the ALJ could dismiss Dr. Grant's evaluation as inconsistent. But, a more holistic view of Dr. Grant's history of treatment of Mr. Slonaker suggests that the ALJ could find a reasonable basis for affording great weight to Dr. Grant's August 2014

---

[2] Even though Mr. Slonaker's therapist is not an acceptable medical source who can offer an opinion about what Mr. Slonaker can still do despite his impairments, *see* 20 CFR § 404.1513(a)-(c), the agency may consider evidence from Mr. Slonaker's therapist "to show the severity of [his] impairment[s] and how it affects [his] ability to work." 20 C.F.R § 404.1513(d).

evaluation. Thus, if the ALJ had this additional medical evidence to substantiate Mr. Slonaker's allegations, there is a reasonable possibility that the administrative result would have been different. *See Lipscomb v. Comm'r of Soc. Sec.*, 199 Fed. Appx. 903, 908 (11th Cir. 2006) ("Given the credit the ALJ gave to Dr. Hammerberg and because Dr. Hammerberg provided more specific opinions about Lipscomb's capabilities in the March 2005 questionnaire, it is possible that the new evidence, if credited, could change the administrative result.").

The Commissioner argues that the new evidence should not be entitled to deference or be given substantial weight; therefore, there is no reasonable possibility that the administrative decision would be different. (Doc. 10, pp. 22-25). If Dr. Grant's opinions were inconsistent with and could not be supported by the medical evidence, then the Court would agree that these opinions are not material. However, contrary to the Commissioner's argument, both the CED therapist's and Dr. Grant's opinions are consistent with the weight of the medical evidence; therefore, the evidence is material.

In the supplemental records, both Dr. Grant and the CED therapist found that Mr. Slonaker could not "understand, remember or carry out very short and simple instructions," or "maintain attention, concentration and/or pace for periods of at least two hours," or "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," or "sustain an ordinary

routine without special supervision," or "accept instructions and respond appropriately to criticism from supervisors," or "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." (Doc. 7-3, pp. 18, 22). Medical records that pre-date the ALJ's decision indicate that as far back as June 22, 2009, Mr. Slonaker had symptoms of anxiety and depression. (Doc. 7-8, p. 65). Five years later, Dr. Grant's records indicate that Mr. Slonaker experienced hallucinations. (Doc. 7-8, p. 65). Although Dr. Nichols's ultimate conclusions about Mr. Slonaker's limitations are somewhat inconsistent with Mr. Slonaker's supplemental records, Dr. Nichols opined in April 2014 that Mr. Slonaker's prognosis was poor because the treatment he had received from CED had not resolved his symptoms. (Doc. 7-8, p. 101). This evidence supports the therapist's and Dr. Grant's supplemental opinions.

Had the ALJ been persuaded by the new medical opinions, there is a reasonable probability that the ALJ's decision would have been different because the medical opinions directly contradict the ALJ's original findings. Dr. Grant and the therapist stated that Mr. Slonaker does not have the ability to, "accept instructions and respond appropriately to criticism from supervisors." (Doc. 7-3, pp. 18, 22). However, the ALJ found that Mr. Slonaker has the ability to perform unskilled work, which requires the "abilities (on a sustained basis) . . . to respond appropriately to supervision, co-workers and usual work situations." SSR 85-15,

14

1985 WL 56857, at *4. The ALJ's finding contradicts the new medical evidence, and the new evidence is material. *See Washington*, 806 F.3d at 1322 (finding that a doctor's opinion was consistent with the medical record and was, therefore, material).

Because the CED Mental Health records from August 29, 2014 and September 11, 2014 (Doc. 7-3, pp. 17-21), as well as the Mental Health Source Statements from Dr. Grant and the therapist (Doc. 7-3, pp. 18, 22) are new, material, and chronologically relevant to the ALJ's decision, the Appeals Council erred in not reviewing this evidence. On remand, the ALJ should consider these records in making his ultimate decision on disability.

Because the Court remands this action for the ALJ to consider certain medical evidence, the Court does not address Mr. Slonaker's argument that the Court also should remand this case on the basis of Social Security Ruling16-3P. (*See* Doc. 12). The Court asks the ALJ to please consider on remand whether Social Security Ruling 16-3P changes the analysis with respect to Mr. Slonaker's subjective complaints of pain.

## V. CONCLUSION

For the reasons discussed above, the Court remands the decision of the Commissioner for further administrative proceedings consistent with the Court's memorandum opinion.

**DONE** and **ORDERED** this March 31, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE